UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
-------------------------------x
ROBERT J. VOCCOLA,              :
                                :
          Plaintiff,            :
                                :
v.                              :   CASE NO. 3:09CV00390(AWT)
                                :
JOSEPH GAUDETT, in his official :
capacity as Chief of Police of  :
the City of Bridgeport;         :
RALPH JACOBS, in his official   :
capacity as the Personnel       :
Director of the City of         :
Bridgeport; the CIVIL SERVICE   :
COMMISSION of the City of       :
Bridgeport, and the CITY OF     :
BRIDGEPORT,                     :
                                :
          Defendants.           :
                                :
-------------------------------x
```

## RULING ON MOTION FOR JUDGMENT AS A MATTER OF LAW

For the reasons set forth below, the plaintiff's motion for judgment as a matter of law is being granted.

### I.    FACTUAL BACKGROUND

The City of Bridgeport (the "City") is a municipal corporation and body politic, organized and existing under the laws of the State of Connecticut.  Defendant Chief Joseph Gaudett ("Chief Gaudett") was at the time of the termination of the plaintiff's employment the Chief of Police of the City, and under the provisions of the Bridgeport City Charter was one of the three persons or entities responsible for deciding whether the plaintiff's employment as a police officer for the City should be

terminated.

Defendant Ralph Jacobs ("Jacobs") was at the time of the termination of the plaintiff's employment the Personnel Director of the City, and under the provisions of the Bridgeport City Charter was one of the three persons or entities responsible for deciding whether the plaintiff's employment as a police officer for the City should be terminated.  Defendant Civil Service Commission of the City of Bridgeport (the "Commission") is an administrative agency of Bridgeport, and under the provisions of the Bridgeport City Charter was one of the three persons or entities responsible for deciding whether the plaintiff's employment as a police officer for the City should be terminated.

Chief Gaudett, Jacobs and the Commission, each with one vote, sat as the administrative tribunal that decided to terminate the plaintiff's employment.[1]  The provisions of the Bridgeport City Charter do not provide the plaintiff with an appeal from the actions of Chief Gaudett, Jacobs and the Commission.

On April 21, 2008, the City appointed the plaintiff to a probationary position of police officer in the Bridgeport Police Department.  The plaintiff was assigned to the Bridgeport Police

---

[1]Because Chief Gaudett and Jacobs were sued only in their official capacities and the other defendants are the Commission and the City, the plaintiff's claim is in substance against only the City.  Therefore, the parties agreed that the case would be submitted to the jury naming only one defendant, i.e., the City.  Therefore in this ruling, only the City is referred to as the defendant.

Department Training Academy.  On October 9, 2008, Bryan T. Norwood ("Chief Norwood"), Chief Gaudett's predecessor as the Chief of Police, sent a letter to Jacobs in which he stated that he was asking the Commission to terminate the employment of the plaintiff and another probationary police officer, Ralph Fensore.

The position of police officer is a position within the competitive division of the classified service of the City.  The parties stipulated that Section 213 of the Bridgeport City Charter provides that

> [t]o enable appointing officers to exercise sound discretion in the filling of positions, no appointment, employment or promotion in any position in the competitive division of the classified service shall be deemed final until after the expiration of a period of three to six months (in the case of police officers, one year) probationary service, as may be provided in the rules of the civil service commission.  The commission, the personnel director and the executive head of the department concerned shall determine the permanent appointment.  During the probationary period, they may terminate the employment of the person so certified, during the performance test thus afforded, upon observation or consideration of the performance of duty, they shall deem him unfit for service...

(Joint Trial Mem. (Doc. No. 27) ¶ 11).

A hearing was scheduled by Jacobs for October 14, 2008 on the request by Chief Norwood to have the Commission terminate the employment of probationary police officers Fensore and Voccola. The hearing scheduled for October 14, 2008 was tabled and

3

rescheduled for October 28, 2008.  Chief Gaudett, Jacobs and the Commission terminated the plaintiff's employment as a police officer on October 28, 2008 by a unanimous vote.  When the plaintiff's employment was terminated, he was serving in a probationary status.

## II.  LEGAL STANDARD

"A district court may enter judgment as a matter of law against a party only if 'there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue.'"  Advance Pharmaceutical, Inc. v. United States, 391 F.3d 377, 390 (2d Cir. 2004) (quoting Fed. R. Civ. P. 50(a)).  See also Izzarelli v. R.J. Reynolds Tobacco Co., 806 F. Supp. 2d 516, 524 (D. Conn. 2011) ("Rule 50(b) of the Federal Rules of Civil Procedure provides for the entry of judgment as a matter of law where a jury renders a verdict for which there is no legally sufficient evidentiary basis.").

"A Rule 50 motion may only be granted if there exists such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or the evidence in favor of the movant is so overwhelming that reasonable and fair minded persons could not arrive at a verdict against it."  Tepperwien v. Energy Nuclear Operations, Inc., 663 F.3d 556, 567 (2d Cir. 2011) (internal quotations omitted).

4

## III. DISCUSSION

The jury was instructed that to prove his § 1983 claim the plaintiff was required to establish by a preponderance of the evidence (1) that the acts complained of were committed by the defendant under color of state law; (2) that the defendant intended to take the acts complained of, and in so doing, deprived the plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States -- in particular, his right not to be deprived of a liberty interest in his reputation without due process of law; and (3) that the acts of the defendant were the proximate cause of injury or damage sustained by the plaintiff.  See Gomez v. Toledo, 446 U.S. 635, 638 (1980); Eagleston v. Guido, 41 F.3d 865, 876-77 (2d Cir. 1994); 5 Leonard B. Sand et al., Modern Federal Jury Instructions-Civil, Instruction 87-68 (2011).

The first and third elements were not disputed.  The jury was informed, as to the first element, that there was no dispute that in connection with the events at issue, the defendant was exercising power possessed by it by virtue of state law and thus, was acting under color of state law.  As to the third element, the jury was instructed on proximate cause and all of the evidence on this point showed that the acts of the defendant were the proximate cause of injury or damage sustained by the plaintiff.

As to the second element, the jury was informed that the plaintiff contends that the defendant deprived him of a liberty interest without due process of law because, in the course of terminating his employment, it made a charge against him that seriously impaired his ability to take advantage of other employment opportunities without providing him with a hearing to clear his name that satisfied the requirements of due process. See O'Neill v. City of Auburn, 23 F.3d 685, 691 (2d Cir. 1994) ("Our courts have established that the 'liberty' interest protected by the due process clause includes in certain circumstances the right to contest at a hearing public, stigmatizing governmental accusations that impose a substantial disability.").

The jury was instructed that to establish this element the plaintiff had to prove by a preponderance of the evidence:

> **First**, that the defendant made a statement about him that is injurious to his reputation, that is capable of being proved false, and that the plaintiff claims is false;
>
> **Second**, that the result was some tangible and material state-imposed burden in addition to the stigmatizing statement; and
>
> **Third**, that the defendant deprived the plaintiff of the liberty interest in his reputation without providing process adequate to justify its action.

See Monserrate v. N.Y. State Senate, 599 F.3d 148, 158 (2d Cir. 2010).

6

With respect to the first prong, the plaintiff introduced evidence that the defendant made a statement about him that is injurious to his reputation.  The plaintiff introduced into evidence the October 9, 2008 letter from Chief Norwood to Jacobs which stated: "Please be advised that Probationary Police Officers Ralph Fensore and Robert Voccola failed their final agility tests on Wednesday, October 8, 2008.  Both recruits also falsified documents, claiming to have sustained work-related injuries which prevented them from passing their agility tests. . . ."  (Joint Ex. 2).  The plaintiff also introduced into evidence statements Chief Gaudett conceded making to a reporter, and which appeared in the <u>Connecticut Post</u>, that Voccola and Fensore had been dismissed "for not being truthful," that Voccola and Fensore had failed their agility test and "[b]oth recruits also falsified documents, claiming to have sustained work-related injuries which prevented them from passing their agility tests," and that Voccola and Fensore "provided a document that they had been hurt in the previous run" which was untrue.  (Pl.'s Ex. 13).  There was no other evidence introduced on this point.

With respect to the requirement that the statement be one that is capable of being proved false, the only evidence on this point was introduced by the plaintiff.  The plaintiff introduced the testimony of Officer Angel Vasquez, Officer Julio Rodriguez and Officer Thomas Flaherty, eyewitnesses who recounted seeing

the plaintiff fall during the agility run, thus substantiating
the plaintiff's claim that he incurred the injury during the
course of that run.  In addition, the plaintiff introduced
evidence in the form of Joint Exhibits 4 (the plaintiff's
worker's compensation information form), 5 through 9 (medical
reports from St. Vincent's Medical Center) and 10 (a letter from
the plaintiff to Sergeant Jacques dated October 8, 2008).  As to
each of these documents, Chief Gaudett testified that the
defendant makes no claim that the document was falsified.  There
was no other evidence introduced on this point.

    As to the requirement that the plaintiff claimed the
statement is false, the only evidence was the plaintiff's
testimony that the statement that he had falsified documents
relating to a work-related injury was false.  (See Excerpt of
Jury Trial, Test. Robert Voccola, July 6, 2011 (Doc. No. 55) 18
("And, you know, to get this letter on the next day was
devastating.  Total slap in the face, to my family's face.  I was
just ashamed and embarrassed for allegations that are totally
false, that had no merit of any sort.  You know, it was just
terrible.")).  There was no other evidence introduced on this
point.

    Finally, as to the requirement that the defamatory statement
be sufficiently public to create or threaten a stigma, current
Personnel Director David Dunn ("Dunn") testified that the October

9, 2008 letter was placed in the plaintiff's personnel file.  <u>See</u> <u>Segal v. City of New York</u>, 459 F.2d 207, 213 (2d Cir. 2006) ("We have previously held that the placement of statements in an employee's personnel file may satisfy the contemporaneous public disclosure elements of a stigma-plus claim.") (citing <u>Brandt v.</u> <u>Bd. of Coop. Educ. Servs.</u>, 820 F.2d 41, 45 (2d Cir. 1987)).  In addition, Chief Gaudett's statement to the press, which was published in the Connecticut Post under the headline "2 city police rookies fired," in which he said the plaintiff had been fired for not being truthful and had falsified a document, was also sufficiently public to create or threaten a stigma.  (Pl.'s Ex. 13).

     With respect to the second prong, <u>i.e.</u> the requirement that the plaintiff prove that the result was some tangible and material state-imposed burden in addition to the stigmatizing statement, the plaintiff had to prove the statement was reasonably likely to impose a substantial disability on the plaintiff's pursuit of a career as a police officer.  The plaintiff introduced testimony by Dunn that falsifying records "would probably be a habits and conduct disqualifying event, in my opinion" with respect to a candidate for a position as police officer, (Excerpt of Jury Trial, Test. Dunn (Doc. No. 57) 17), and testimony by Chief Gaudett that if the plaintiff applied for employment to the Bridgeport Police Department, having been

terminated by another department for falsifying records would have "a negative impact" on the Bridgeport Police Department's decision to hire the plaintiff.  (Excerpt of Jury Trial, Test. Gaudett (Doc. No. 57) ("Gaudett Tr. 7/5/11") 95).

With respect to the third prong, i.e. the requirement that the plaintiff prove that the defendant deprived him of a liberty interest in his reputation without providing process adequate to justify its action, the plaintiff was required to establish that the defendant did not provide him with a name clearing hearing that was held at a meaningful time and in a meaningful manner. See Segal, 459 F.3d at 216-17.

It was undisputed that there are three ways in which the due process requirement of a name clearing hearing can be satisfied: (i) providing the employee with a pre-termination hearing that is not a full evidentiary hearing but is followed post-termination by a full trial type evidentiary hearing; (ii) providing the employee only with a full trial type evidentiary hearing post-termination; and (iii) providing the employee only with a pre-termination hearing that satisfies the requirements for a full trial type evidentiary hearing.  See Brock v. Roadway Express, Inc., 481 U.S. 252, 264 (1987); Locurto v. Safir, 264 F.3d 154, 171-75 (2d Cir. 2001).

It was also undisputed that the plaintiff was never provided a full, trial-type post-termination hearing, so the pre-

termination hearing that was held for the plaintiff had to meet
the more rigorous standard of a full trial-type hearing, in
addition to satisfying the following minimal due process
requirements: (i) the employee must be provided with notice of
the charges sufficiently in advance of the hearing to permit
preparation; (ii) the employee must be provided with an
explanation of the nature of the evidence on which the charges
are based and supported; and (iii) the employee must be afforded
an opportunity to respond to the charges.  In addition, it was
undisputed that due process required that the defendant inform
the plaintiff not only of the nature of the charges but also
inform the plaintiff of the substance of the relevant supporting
evidence.  See Faghri v. Univ. of Conn., 621 F.3d 92, 99 (2d Cir.
2010).

However, Chief Gaudett testified that the plaintiff's
employment was not terminated because he had falsified documents,
but rather, because he failed to follow the policies and
procedures, rules and regulations of the Bridgeport Police
Department concerning reporting injuries:

> Q: What was the department's contention
> October 28th when it terminated Mr.
> Voccola's employment?
>
> A: That he failed to follow the policies and
> procedures, rules and regulations of the
> Bridgeport police department concerning
> reporting injuries.

(Gaudett Tr. 7/5/11, 88).

Chief Gaudett also testified that the plaintiff was never given notice that the charge against him at the hearing would be failure to follow policies and procedures, rules and regulations regarding reporting injuries.  Chief Gaudett was shown the October 9, 2008 letter and asked the following questions:

> Q:  Chief, I'm showing you Exhibit 2.  Where in Exhibit 2 does it state that?
> A:  There's no language that states that, sir.
> Q:  Chief, do you have any documents or the police department have any documents where they put in writing notice to Mr. Voccola that he was charged [with] not following procedures and reporting an injury?
> A:  I do not believe so, sir.

(Id.).

Chief Gaudett's testimony also reflects that the plaintiff and his counsel proceeded into the hearing with the understanding that the charge against the plaintiff was falsifying documents. Chief Gaudett testified:

> Q:  What were your duties?  What role did you take on at the hearing?
>
> A:  Well, actually at the hearing I tried to clarify, you know, my understanding of why we were there.  I remember distinctly Mr. Bucci saying, "Where's the falsified documents?   There's no falsified documents here?"  And I understood what he was saying.
>
> So I asked Mr. Voccola a series of

12

questions to establish the fact that he
was familiar with the rules and
regulations of the Bridgeport Police
Department. In fact, he spent many
weeks, several weeks learning them, that
he knew what the rules and regulations
were as far as how to report an injury,
and he acknowledged that he in fact had
been disciplined for not reporting an
injury on time and had been counseled.
He told me he understood he was supposed
to report an injury immediately. And
when I asked him why he did not report
that injury immediately, he had no
answer. That was pretty much the end of
the questioning.

There was this real question of
credibility here. And I'm not sure why
one would want to wait to get to this
point and then avoid a run -- I'm not
sure what his motivation was for saying
he wasn't injured and then saying he was.
But, you know, it's not something
certainly -- it affects his credibility.

(Excerpt of Jury Trial, Continued Test. Joseph Gaudett, July 6,

2011 (Doc. No. 65) 12-13).

Chief Gaudett also testified:

Q:   At the hearing did Mr. Voccola, with or
through his attorney, contest the
allegations, put on evidence or
information?

A:   I recall Attorney Bucci saying, "Where's
the falsified documents?" And he was
focused on the fact that there were
falsified documents. And really it was a
question of the credibility of the
officer. Is he injured? Is he not
injured? Why did he say he wasn't
injured if now later he claims he was?
By his own admission, he failed to follow
the rules and regulations knowing that he

13

> was supposed to claim it and yet
> acknowledging that he didn't claim
> it until days later.

(Id. at 14).

The evidence is undisputed that the only notice the plaintiff received with respect to the hearing was the October 9, 2008 letter, and Chief Gaudett also testified:

> Q:   In Exhibit 2, which is Chief Norwood's
>      initial recommendation for the
>      termination of Robert Voccola, is there
>      any reference to Robert Voccola's failure
>      to follow the procedures of the
>      department in reporting the injury?
>
> A:   No, sir.
>
>      . . .
>
> Q:   Chief, when was the first time – question
>      withdrawn.  Was Robert Voccola, prior to
>      the hearing of the 28th, ever given any
>      notice that he was being charged with
>      failure to follow department procedure in
>      reporting an injury?
>
> A:   No, sir.  You have all the documentation,
>      the notices that he received.  There were
>      no other notices.
>
> Q:   The first time that charge came up,
>      Chief, wasn't it at the civil service
>      hearing during the course of the hearing?
>
> A:   I believe that was the first time that
>      that issue came to light, yes.
>
> Q:   Robert Voccola had no prior awareness
>      that he was going to be charged with
>      failure to follow department procedure in
>      failing to report a work-related injury?
>
> A:   I can't say that.  I think Mr. Voccola

14

was very aware of why he was there.  I
don't think there was any mystery there.

Q:    Chief, was there any notification by the
      department, verbally or in writing,
      informing Robert Voccola one of the
      charges you are going to face at this
      hearing is your failure to report a work-
      related injury pursuant to department
      policy?

A:    It's not in the documentation, no, sir.

Q:    You didn't tell him?

A:    I did not.

      . . .

Q:    Did you communicate to Mr. Jacobs that
      you planned to charge Robert Voccola with
      failure to follow department procedure in
      reporting a work-related injury?

A:    Not that I recall.

Q:    Did you inform the members of the Civil
      Service Commission prior to the hearing
      that you planned to charge Robert Voccola
      with failure to report a work-related
      injury pursuant to department policy?

A:    Not that I recall, no, sir.

(Id. at 21).

     Thus, the only member of the decisionmaking body who
testified at trial testified that the first time the charge that
constituted the basis for the termination of the plaintiff's
employment came up was during the course of the hearing and
consequently, that the plaintiff was given no notice prior to the
hearing of that charge.  Moreover, even the other two

15

decisionmakers were not aware, prior to the hearing, of the existence of the charge that constituted the basis for the termination of the plaintiff's employment.

In light of the foregoing, the court concludes that the evidence in favor of the plaintiff is so overwhelming that reasonable and fair-minded persons could not arrive at a verdict against him on the question of whether he was deprived of a liberty interest without due process of law by virtue of the fact that, in the course of terminating his employment, the defendant made a charge against him that seriously impaired his ability to take advantage of other employment opportunities without providing him with an opportunity to clear his name that satisfied the requirements of due process.

## IV.  CONCLUSION

For the reasons set forth above, the Plaintiff's Renewed Motion Pursuant to Rule 50(b) For Judgment as a Matter of Law and a New Trial on Damages, or, in the Alternative, To Set Aside the Jury Verdict and to Grant New Trial Pursuant to Rule 59 of the Federal Rules of Civil Procedure (Doc. No. [51]) is hereby GRANTED.  Judgment as a matter of law shall enter in favor of the plaintiff as to liability on the First Cause of Action in the Complaint.

It is so ordered.

16

Signed this 20th day of March, 2012 at Hartford,

Connecticut.

_____/s/_____

Alvin W. Thompson

United States District Judge
